### Joe Curtis v. The State.

#### No. 3537. Decided April 21, 1915.

Rehearing denied May 19, 1915.

**1.—Burglary—Private Residence—Former Jeopardy—Carving.**

Where, upon trial of burglary of a private residence in the night-time, defendant pleaded former jeopardy showing that he had been indicted for the same transaction for an ordinary burglary, and had gone to trial thereon before a jury. Held, that the same was insufficient as the two offenses are separate and distinct, and the doctrine of carving does not apply.

**2.—Same—Evidence—Newspaper Article—Contradicting Witness.**

Upon trial of burglary, there was no error in not permitting the defendant to introduce in evidence a newspaper article in which it was claimed the prosecuting witness had made contradictory statements to his testimony on trial. Davidson, Judge, dissenting.

**3.—Same—Sufficiency of the Evidence.**

Where, upon trial of burglary of a private residence in the night-time, the evidence sustained the conviction, there was no reversible error. Davidson, Judge, dissenting.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robert B. Seay.

Appeal from a conviction of burglary; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*William H. Allen,* for appellant.—On question of former jeopardy: Hirshfield v. State, 11 Texas Crim. App., 207; Shoemaker v. State, 58 Texas Crim. Rep., 518; Cornelius v. State, 54 id., 173; Gray v. State, 135 S. W. Rep., 1179; Muckenfuss v. State, 117 S. W. Rep., 853; Gilbert v. State, 57 Texas Crim. Rep., 85, 121 S. W. Rep., 1126.

*C. C. McDonald,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted under an indictment charging him with burglary of a private residence in the night-time, his punishment being assessed at five years confinement in the penitentiary.

When the case was called for trial he filed a plea of jeopardy setting out that he had been previously indicted and placed on trial before a jury under an indictment charging him with an ordinary burglary by force, threats and fraud, without alleging it was burglary of a private residence in the nighttime. In other words, the first indictment charges him with an ordinary burglary, whereas the one under which this conviction was obtained charges him with burglary of a private residence at night. Upon the first trial, after proceeding with the trial before the jury, in the introduction of evidence, it is to be supposed from the pleadings it was discovered that the house was a private residence, the burglary being committed at night. Appellant could not, therefore, be convicted under a charge of ordinary burglary. Burglary of a private residence at night is a distinct and different offense, made so by the statute expressly. In other words, under an indictment charging ordinary burglary a party can not be convicted for the burglary of a private residence at night; nor can he be convicted, if the charge is for burglarizing a private residence, for the ordinary burglary. This being true, the court was correct in withdrawing the case from the jury, so that jeopardy did not attach. If, under the facts, or the transaction itself, the offense of ordinary burglary could have been carved out of the real facts, that is, if ordinary burglary could be had for the burglary at night of a private residence under the doctrine of carving, his proposition of jeopardy would be well taken, but this could not be done. It is expressly recognized that under the doctrine of carving where the State elects out of any given state of facts growing out of a transaction to prosecute for one phase of it, that would end the prosecution. The State can carve but once, and having elected its line of prosecution, would be held to it. But that is not possible in this case. A similar case might be supposed. For instance, a trial for theft from the person could not bar an ordinary theft, and vice versa. The two offenses are entirely distinct. They are so defined and placed in our Penal Code that one could not be carved out of the other. It would not be possible to place a man in jeopardy for ordinary theft under an indictment charging him with theft from the person. This ruling of the court, "striking out" the plea of jeopardy, we think, was not erroneous.

The two remaining bills of exception are, in substance, that on the morning after the alleged burglary the owner of the house, whose name

was James, made a statement of the occurrence to Mr. Hambrick of the attendant circumstances of the burglary. Mr. Hambrick, being a newspaper man, wrote it up for the Times Herald, in which paper it was published. James' testimony before the jury was different from the statement he made to Hambrick. James, on the trial of the case, identified appellant as being the man who attacked him near his residence on the night of the burglary. The statement to Mr. Hambrick was to the effect, in substance, that James really did not know who it was, but stated it was a "large yellow negro," or a "tall yellow negro." The evidence shows that appellant was neither; that he was a man about five feet and eight or nine inches in height, and was what some of the witnesses called a "brown colored negro," and some a "ginger colored negro." Hambrick was permitted to impeach James upon these statements. The appellant also insisted upon placing before the jury the "write-up" by Mr. Hambrick of the conversation with James. This is based upon the fact that James' attention was called to the article while he was on the witness stand, and he stated that he recollected reading it, and it may have been substantially correct; that he did not pay particular attention to it. The appellant then offered the article in evidence supposedly either to bolster Hambrick's testimony or to impeach James' evidence, or for both purposes. Inasmuch as Hambrick contradicted flatly Mr. James' testimony in regard to his description of the negro, we are of opinion there was no such error in refusing the newspaper article as evidence as to call for a reversal of the judgment. That was largely Mr. Hambrick's version of the conversation that occurred between himself and James, and the material part of that was gotten before the jury by Hambrick's testimony. If Mr. James had stated that the article was correct, it would have been but a contradiction of his testimony as given on the trial and as written up by the witness Hambrick. The writer is of the opinion that it ought to have gone before the jury. While it might not be of sufficient importance to require a reversal, still under the circumstances the writer thinks it ought to have been permitted to go to the jury.

It is contended the evidence is not sufficient. This presents a right difficult question, which to the mind of the writer is well taken, but I am met again with the fact that my brethren do not agree with me. Upon the trial of the case Mr. James identified defendant—not by name, but said he knew defendant, and he was the man who was at his house on the night of the burglary. He had stated to Hambrick a description of another man entirely, and, in substance, that he did not know the negro, but he was a tall yellow negro, or a large yellow negro. He had also on the night of the burglary failed entirely to identify the defendant in talking to the officers with reference to the burglary. However, he fully identified the defendant on the trial as being the man. In addition to this state of the record, several witnesses testified to a complete alibi, placing themselves in such position that they could have been contradicted if they were not testifying the truth. The State offered no evidence in contradiction of the alibi of these witnesses. They

placed themselves in company with appellant at such time and under such circumstances that he could not have been the guilty party. The nearest approach to James' residence by appellant on that night, under their testimony, was about one mile, or in the neighborhood of that distance. James testified that it was defendant, and he recognized him, and under the following circumstances: He left his home in the morning and did not return until 6 or 6:30 in the evening. His wife had left home at 10 or 11 o'clock in the morning and had gone in the country to visit her grandmother. James, upon returning to his house in the evening about 6 o'clock, discovered the fact that his house had been burglarized. He closed the house and went off in search of officers. Upon his return later about 10 o'clock he discovered that in the meantime his house was again burglarized. That he went in the house and turned on the light, and noticed a door swing open and close and a negro woman ran out of the room. He chased her out of the house and finally caught her. After he got hold of her some distance from his residence he says appellant came upon him with an open knife and cut at him, and would have cut him seriously but was prevented by his watch chain. The theory of the State was that appellant was keeping watch while the woman was in the house. There was no evidence that he was in the house, and the only evidence with reference to that matter is, as above stated, that about the time James caught the negro woman appellant came from somewhere about the premises and made an assault upon him. He turned the woman loose, and the man and woman fled.

Under this state of case my brethren believe the case ought to be affirmed, and it is accordingly so ordered.

*Affirmed.*